900 F.2d 576
 58 USLW 2636, Fed. Sec. L. Rep. P 95,267
 McMAHAN & COMPANY, Froley, Revy Investment Co., Inc. and
Wechsler & Krumholz, Inc., Plaintiffs-Appellants,
v.
WHEREHOUSE ENTERTAINMENT, INC., Louis A. Kwiker, George A.
Smith, Michael T. O'Kane, Lawrence K. Harris, Donald E.
Martin, Joel D. Tauber, Furman Selz Mager Dietz & Birney,
Inc., Wei Acquisition Corp., Wei Holdings, Inc., Adler &
Shaykin, and Chemical Bank, Defendants-Appellees.
 No. 399, Docket 89-7664.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 19, 1989.
Decided April 10, 1990.
 
 Philip K. Howard, New York City (Howard, Darby & Levin, Warren G. Caywood, Jr., Bonnie Blacklock, of counsel), for appellant McMahan.
 Dennis J. Block, New York City (Weil, Gotshal & Manges, H. Adam Prussin, Richard B. Friedman, Miranda S. Schiller, of counsel), for appellee Wherehouse.
 Before OAKES, PRATT, Circuit Judges, and SAND, District Judge for the S.D.N.Y., sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Plaintiffs appeal from a judgment of the United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, dismissing their complaint that defendants made material misrepresentations and omissions in a debenture offering in violation of Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j; Sec. 11 of the Securities Act of 1933, 15 U.S.C. Sec. 77k; and Sec. 12(2) of the Securities Act of 1933, 15 U.S.C. Sec. 77l. Finding that the complaint "fail[ed] to allege any omission or misstatement of fact--material or otherwise--within the meaning of the securities laws", the district court granted summary judgment to defendants. The court also dismissed plaintiffs' state-law claims for lack of pendent jurisdiction. Since we conclude that plaintiffs presented sufficient evidence to create a genuine issue as to whether the offering was materially misleading, we reverse the summary judgment and remand the case for further proceedings.
 
 BACKGROUND
 
 2
 Defendant Wherehouse Entertainment, Inc. offered 6 1/4% convertible subordinated debentures whose key selling feature was a right of holders to tender the debentures to Wherehouse in the case of certain triggering events which might endanger the value of the debentures. The tender right was to arise if:
 
 
 3
 (a) A person or group * * * shall attain the beneficial ownership * * * of an equity interest representing at least 80% of the voting power * * * unless such attainment has been approved by a majority of the Independent Directors;
 
 
 4
 (b) The Company * * * consolidates or merges * * * unless approved by a majority of the Independent Directors;
 
 
 5
 (c) The Company * * * incurs * * * any Debt * * * excluding * * * Debt which is authorized or ratified by a majority of the Independent Directors, immediately after the incurrence of which the ratio of the Company's Consolidated Total Debt to its Consolidated Capitalization exceeds .65 to 1.0.
 
 
 6
 Indenture Sec. 5.02, 11-12 (June 15, 1986); see also Prospectus Summary, "Optional Tender", 3 (July 10, 1986); id. Description of Debentures, "Optional Debenture Tender", 25-26.
 
 
 7
 The offering materials defined an "Independent Director" as "a director of the Company" who was not a recent employee but who was a member of the board of directors on the date of the offering or who was subsequently elected to the board by the then-Independent Directors. Indenture, Sec. 5.02, 12; Prospectus Description of Debentures, "Optional Debenture Tender", 26. The reason offered for this unusual right to tender was that it would be a protection against certain forms of take-over attempts, including leveraged buy-outs. Prospectus Description of Debentures, "Effect on Certain Takeovers", 27. At the heart of this appeal is the meaning of the limitation placed on the right to tender by the role of "Independent Directors".
 
 
 8
 Plaintiffs are financial institutions that purchased 34% of the convertible debentures. Eighteen months after the purchase, Wherehouse entered into a merger agreement with defendants WEI Holdings, Inc. and its subsidiary WEI Acquisition Corp. The practical effect of the merger, accomplished through a leveraged buy-out, left Wherehouse with a debt approaching 90% of its capitalization and left plaintiffs' debentures valued at only approximately 50% of par. Plaintiffs attempted to exercise their right to tender, but the company refused to redeem the debentures on the ground that the "board of directors" had approved the merger.
 
 
 9
 Plaintiffs then commenced this suit for damages and an injunction to prevent the merger. Named as defendants were Wherehouse, various officers of Wherehouse, the underwriter of the debentures, WEI Holdings, Inc., WEI Acquisition Corp., and the bank that was financing the tender offer. Plaintiffs claimed that the descriptions of the debentures in the registration materials, as well as representations made during conversations, were materially misleading. Specifically, they claimed that, even though the defendants knew that the right to tender was illusory, their representations of the right as valuable and protected had misled investors into buying the debentures and therefore violated federal securities laws. In the alternative, claiming that the representations created a right to tender under the contract, plaintiffs asserted state-law claims of breach of contract, interference with contract, breach of implied duty of good faith, and fraudulent conveyance.
 
 
 10
 Defendants argued that all the relevant provisions were clear and unambiguous and that no false statements were made; thus the offering was not materially misleading or in violation of the securities laws.
 
 
 11
 The district court found nothing misleading. It granted summary judgment to defendants and dismissed plaintiffs' state-law claims for lack of pendent jurisdiction. The district court held that defendants were not required to speculate about the likelihood of a waiver of debentureholders' rights by the Independent Directors and that, even if the right were worthless, defendants were not required to use pejorative terms describing it as such. Moreover, it found the tender option was not illusory, because it (was possible that it) might provide a benefit to debentureholders in the case of a takeover hostile to shareholders which management chose to fight. Finally, according to the district court, the definition of "Independent Directors" was adequate because further description of their role, the extent of their discretion, their interests, or their intent would constitute mere legal conclusions, characterizations, or descriptions of underlying motives and were not required disclosures. Thus, the district court found that the descriptions of the right were not misstatements, and that the alleged omissions were not required to be disclosed under the securities laws.
 
 
 12
 We disagree with the district court's atomistic consideration of the presentation of the debentureholders' right to tender. The district court concluded that defendants had not misled plaintiffs because the information they included in the written and oral representations was "literally true". We think, however, that when read as a whole, the defendants' representations connoted a richer message than that conveyed by a literal reading of the statements. The central issue on all three claims is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have mislead a reasonable investor about the nature of the debentures.
 
 
 13
 Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers. Greenapple v. Detroit Edison Co., 618 F.2d 198, 205 (2d Cir.1980) (where method of presentation or "gloss" placed on information obscures or distorts significance of material facts, it is misleading). Even " 'a statement which is literally true, if susceptible to quite another interpretation by the reasonable investor * * * may properly * * * be considered a material misrepresentation.' " Beecher v. Able, 374 F.Supp. 341, 347 (S.D.N.Y.1974) quoting SEC v. First American Bank & Trust Co., 481 F.2d 673 (8th Cir.1973).
 
 
 14
 We hold that the district court erred in granting summary judgment to the defendants because plaintiffs have raised a triable issue as to whether the written and oral representations about the right to tender these debentures were materially misleading to a reasonable investor in violation of Sec. 11 and Sec. 12 of the 1933 Securities Act and also of Sec. 10(b) of the 1934 Securities Exchange Act. Since the analysis for all three securities claims is similar, we will first consider it in some detail under Sec. 11, and then review it only briefly under Secs. 12 and 10(b).
 
 A. Section 11 of the Securities Act of 1933
 
 15
 Section 11 states that any signer, officer of the issuer, and underwriter may be held liable for a registration statement which "contained an untrue statement of a material fact or omitted to state a material fact * * * necessary to make the statements therein not misleading". Plaintiffs claim that these offering materials misstated the right to tender and omitted important information about it in violation of Sec. 11. They argue that a reasonable investor would have believed that the right to tender was valuable because it was presented as a right to be exercised at the holder's option and as a protection against takeovers that might affect the security of the debentures. In truth, however, the right to tender was illusory, they argue, because it was designed to be exercised only at the option of management and therefore was intended to protect the interests of shareholders, not of debentureholders.
 
 
 16
 Plaintiffs are correct that the offering materials can reasonably be read to present the option to tender as a valuable right. The language used was invariably language of entitlement:
 
 
 17
 Holder's Right to Tender. The Holder of any Security or Securities shall have the right, at his option, * * * to tender for redemption any such Security or Securities.
 
 
 18
 Indenture Sec. 5.01, 10 (emphasis added). The prospectus summary provided that:
 
 
 19
 "Each holder of Debentures has the option to require the Company to redeem the holder's Debentures.""Optional Tender", 3 (emphasis added). And the prospectus itself stated:
 
 
 20
 "Holders of the Debentures will have the option * * * to require the Company to redeem such Debentures."
 
 
 21
 Description of Debentures, "Optional Debenture Tender", 25 (emphasis added).
 
 
 22
 Further, a jury could reasonably view the presentation of the right to tender as a special feature to protect investors, for the offering materials stressed the purported value of the right in any takeover transaction which would threaten the value of the debentures.
 
 
 23
 Since the events which give rise to such right of redemption could be expected to occur in connection with certain forms of takeover attempts, the optional tender provisions could deter takeovers where the person attempting the takeover views itself as unable to finance the redemption of the principal amount of Debentures which may be tendered * * * To the extent that Debentures may be tendered * * * the Company would be unable to use the financing provided by the sale of the Debentures offered hereby. In addition, the ability of the Company to obtain additional Senior Debt based on the existence of the Debentures would be similarly adversely affected.
 
 
 24
 Prospectus Description of Debentures, "Effect on Certain Takeovers", 27; see also id. "Optional Debenture Tender", 26.
 
 
 25
 Finally, the right was restricted only in that it was subject to action by "the Independent Directors". Similar language describing the restriction--the right to tender occurs upon a triggering event, "unless [the event is] approved by a majority of the Independent Directors" (emphasis added)--is found in the Indenture, Sec. 5.02, 11-12; in the prospectus summary, "Optional Tender", 3; and again in the full prospectus, Description of Debentures, "Optional Debenture Tender", 25-26. A jury could reasonably find that this repeated use of the word "unless" encouraged the inference that exercise of the right would be the norm and that waiver would be the exception.
 
 
 26
 Although the offering materials explain that the Independent Directors would be chosen from the company's board of directors, the term "Independent Director" implies a special status, some distinction from an "ordinary" director. The term suggests that these directors would be "independent" of management and the normal obligations of board members to act in the interests of shareholders. Thus the restriction could reasonably be understood to mean that in the case of a triggering event, the right to tender would arise unless the Independent Directors find the event to be in the interests of the debentureholders. In short, as plaintiffs argue, a reasonable investor could have regarded the right to tender as a valuable right, protected by Independent Directors who would, in situations endangering the security of the debentures, consider debentureholders' interests before approving any waiver of their right.
 
 
 27
 By thus representing that in a takeover context the Independent Directors would be considering the interests of debentureholders, the defendants implied that the Independent Directors had a duty to protect the debentureholders' interests. Defendants, however, have shown nothing in their corporate charter or by-laws that would have permitted, much less required, these Independent Directors to favor debentureholders over shareholders. Moreover, at the time of the approval of this merger, the Independent Directors constituted all but one of the "ordinary" directors on the board. As ordinary directors, they had a fiduciary duty to protect the interests of shareholders in any takeover situation, regardless of debentureholders' interests or rights. It is inevitable, then, that the so-called Independent Directors had no independence; they would never protect the interests of debentureholders except by coincidence because, as ordinary directors, they were required by law to protect the interests of the shareholders. From this perspective, there is merit in plaintiffs' contentions that the right to tender was illusory and that the representations of it in the offering materials were misleading.
 
 
 28
 In sum, on a fair reading of the offering materials, despite their literal meaning, an investor could have reasonably believed that the tender option was presented as a valuable right for debentureholders; that it provided a special feature of protection for their interests; and that Independent Directors were to render independent votes on the right to tender based on the impact of a merger and on the interests of debentureholders. But if, as plaintiffs claim, the right to tender was illusory because the Independent Directors were tied to management, served its needs, protected shareholders' interests, and would inevitably waive the right in any merger beneficial to management regardless of debentureholders' interests, then the offering materials could be found by a rational trier of fact to be materially misleading in violation of Sec. 11 of the Securities Act of 1933. Plaintiffs have therefore raised a genuine issue as to whether the written representations could have misled a reasonable investor, Greenapple, 618 F.2d at 205, and summary judgment was therefore unwarranted.
 
 B. Section 12 of the Securities Act of 1933
 
 29
 Section 12(2) of the Securities Act of 1933 presents a problem similar to Sec. 11, but it has the added factor of oral representations made to the investors in order to induce them to purchase. Section 12(2) states that anyone who makes a securities offering "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements * * * not misleading * * * shall be liable" (emphasis added). In an affidavit, Thomas Revy of plaintiff Froley, Revy, alleges that in a phone conversation and at a "due diligence" lunch, officers of Wherehouse specifically represented that the debentures included the right to tender as a "protective covenant for the debentureholders" against takeovers. Plaintiffs claim these oral communications were untrue and violated Sec. 12(2).
 
 
 30
 Defendants argue that the statements were accurate because they would protect holders in the event of a takeover that was hostile to management. The district court agreed, finding that "where the company might find itself subjected to an hostile takeover, the right to tender could, indeed, be 'protective' of the debentureholders' interests."
 
 
 31
 However, the language used--"protective covenant" and "special protection"--is promissory and unrestricted. The statements clearly imply that the protection to debentureholders would extend to the case of any takeover hostile to the holders' rights. It would be, to say the least, a cramped interpretation to view the right to tender as a "protective covenant for the debentureholders" if its protection were limited to a takeover that was hostile only to management and the shareholders. Finally, by representing that this special right to tender was the key selling feature of otherwise low-value debentures, defendants could be found to have implied that debentureholders would be protected against takeovers hostile to their own interests, regardless of the interests of shareholders, and thus to have misled plaintiffs as to the true nature of the right. Summary judgment was therefore inappropriate on plaintiffs' Sec. 12(2) claim.
 
 
 32
 C. Section 10(b) of the Securities Exchange Act of 1934
 
 
 33
 Section 10(b) of the Securities Exchange Act of 1934, the general fraud provision of the act, prohibits any person from using or employing "any manipulative or deceptive device" in connection with the sale of a security. To state a claim under this section, plaintiffs "must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security." Luce v. Edelstein, 802 F.2d 49, 55 (2d Cir.1986); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Plaintiffs claim that disclosure of the true nature of the tender provision not only would have altered a reasonable investor's investment decision, but would have dissuaded investment here by showing these debentures to be a poor risk. They allege that Wherehouse knew this and so deliberately misrepresented the right-to-tender feature, thereby misleading investors in violation of Sec. 10(b).
 
 
 34
 The district court, having dismissed the claims under Sec. 11, found it was therefore impossible to state a Sec. 10(b) claim. Since we have concluded that a question of fact is presented as to whether the offering materials and the oral communications, taken together, could have misled a reasonable investor, it follows that a jury should also determine whether the defendants violated Sec. 10(b).
 
 D. Pendent Claims
 
 35
 Since the only reason for the district court's dismissing plaintiffs' pendent state-law claims was that the federal basis for jurisdiction had disappeared, now that we have reinstated the federal claims, the pendent claims are reinstated as well.
 
 
 36
 Reversed and remanded.
 
 SAND, District Judge:
 
 37
 The reasons why I am constrained to dissent may be briefly stated.
 
 
 38
 The question whether an anti-takeover provision provides a "special protection" to debentureholders cannot be answered in the negative merely because the "Independent Directors" decided to waive its provisions and approve a particular transaction. These directors were explicitly empowered to act in this fashion by virtue of the fully disclosed terms of the provision. A significant function of an anti-takeover provision is to serve as a deterrent to hostile takeovers, including takeovers which would be contrary to the interests of both shareholders and debentureholders. One cannot, I believe, fairly characterize such a provision as being "worthless" to the debentureholders, even though as a matter of Delaware law directors owe a fiduciary duty solely to shareholders. The anti-takeover provision was therefore a "special protection" to debentureholders, albeit a limited one.
 
 
 39
 Federal securities laws do not impose an obligation to advise investors of the fundamentals of corporate governance. The disclosure required by the federal securities laws is not a "rite of confession or exercise in common law pleading. What is required is the disclosure of material objective factual matters." Data Probe Acquisition Corp. v. Data Lab, Inc., 722 F.2d 1, 5-6 (2d Cir.1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). Especially is this so where, as here, the investor-complainants are sophisticated financial institutions making major investments. The role of the federal securities laws is not to remedy all perceived injustices in securities transactions. Rather, as invoked in this case, it proscribes only the making of false and misleading statements or material omissions.
 
 
 40
 Whether the Independent Directors breached an implied duty of good faith or otherwise acted contrary to their fiduciary obligations are matters of state law. Here, the federal claims were asserted only conditionally, the express condition being the failure of the state law claims. These state claims were properly dismissed by the court below for lack of pendent jurisdiction.
 
 
 41
 Believing no valid federal claim to be present, I would affirm essentially for the reasons set forth in the Opinions of the Magistrate and District Court.