**Robert B. HUNT, IRA; Paul James, IRA and Paul James, Plaintiffs–Appellants,**

v.

**ALLIANCE NORTH AMERICAN GOVERNMENT INCOME TRUST, INC.; Alliance Capital Management L.P.; Alliance Capital Management Corporation; Alliance Fund Services, Inc.; Wayne D. Lyski; Robert M. Sinche and David H. Dievler, Defendants–Appellees.**

**Docket No. 97–9477.**

United States Court of Appeals, Second Circuit.

Argued June 9, 1997.

Decided Oct. 15, 1998.

---

James C. Krause, San Diego, CA (Patrick N. Keegan, Krause & Kalfayan, San Diego, CA; David J. Bershad, Robert P. Sugarman and Paul D. Young, Milberg Weiss Bershad Hynes & Lerach, New York, NY, On the Brief), for Plaintiffs–Appellants.

John L. Hardiman, New York, NY (Lori S. Sherman, Sullivan & Cromwell, New York, NY, Of Counsel), for Defendant–Appellee, Alliance North American Government Income Trust, Inc.

James H.R. Windels, New York, NY (Dennis E. Glazer and Katharine L. Strobos, Davis Polk & Wardwell, New York, NY, Of Counsel), for Defendants–Appellees, Alliance Capital Management L.P., Alliance Capital Management Corporation, Alliance Fund Distributors, Inc., Wayne D. Lyski, Robert M. Sinche and David H. Dievler.

Before: OAKES, WALKER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiffs are shareholders in Alliance North American Government Income Trust, Inc. (the "Fund"), an open-ended mutual fund formed to make investments in government-guaranteed securities of Mexico, Canada, the United States, and countries in Central and South America. Plaintiffs brought this action against the Fund (and related persons and entities [1]) alleging various violations of the federal securities laws and common law claims after the value of their shares declined dramatically due to the collapse of the Mexican peso in December 1994. The United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*) dismissed the original complaint. The court also denied plaintiffs' motion for leave to replead on the ground that the Proposed Amended Complaint failed to state an actionable claim. With respect to three of the four proposed claims, we affirm. With respect to plaintiffs' allegation that the Fund's prospectuses misleadingly stated that

---

1. In addition to the Fund, the defendants are: Alliance Capital Management, L.P., the Fund's investment adviser; Alliance Capital Management Corporation, general partner of the investment adviser; Alliance Fund Distributors, Inc., a subsidiary of the investment adviser and the principal underwriter for the Fund; and Equitable Companies Inc., the corporate parent of the investment adviser. The individual defendants are current or former officers, directors, or employees of these entities.

the Fund manager intended to use hedging techniques to reduce currency risk when the defendants knew (or recklessly disregarded) that, as a practical matter, the Fund could not use hedging techniques to protect against currency fluctuations, we reverse.

## BACKGROUND

Plaintiffs purchased their shares in the Fund from March 27, 1992 to December 23, 1994 ("the Relevant Period"). During the Relevant Period the Fund was an open-ended mutual fund that sold shares on a continuing basis pursuant to registration statements and prospectuses. Between February 1992 and December 1994, the Fund issued seven prospectuses, each containing representations that were substantially identical for the purposes of this case.[2] The prospectuses represented that the Fund's investment objective was to "seek[ ] the highest level of current income, consistent with what the Fund's Adviser consider[ed] to be prudent investment risk, that is available from a portfolio of debt securities issued or guaranteed by the governments of the United States, Canada, and Mexico, their political subdivisions, ... agencies, instrumentalities, or authorities...." The prospectuses also stated, "There can be, of course, no assurance that the Fund will achieve its investment objective." The Fund would invest at least 65 percent of its total assets in debt securities issued or guaranteed by the governments of the United States, Canada, and Mexico. The balance of the Fund's assets would be invested in debt securities issued by the governments of countries located in Central and South America.

The prospectuses explained that investing in securities issued by foreign governments involved "possible risks not typically associated with investing in U.S. Government Securities." The value of the Fund's assets could be diminished by, *inter alia*, changes in currency exchange rates. The prospectuses stated,

> If not hedged ... currency fluctuations could affect the unrealized appreciation

and depreciation of non-U.S. Government Securities as expressed in U.S. dollars.

> [ ] Because Fund assets will be invested in fixed income securities denominated in ... foreign currencies and because a substantial portion of the Fund's revenues will be received in currencies other than the U.S. Dollar, the U.S. Dollar equivalent of the Fund's net assets and distributions will be adversely affected by reductions in the value of certain foreign currencies relative to the U.S. Dollar.

The prospectuses discussed several techniques available to the Fund Adviser to hedge against currency risk, including futures contracts and options on futures contracts, options on foreign currencies, forward foreign currency exchange contracts, and options on U.S. and Foreign Government securities. For example, the prospectuses stated the Fund "may" enter into futures contracts and options on futures contracts, which "will be used only to hedge against anticipated future changes in interest or exchange rates which otherwise might adversely affect the value of the Fund's portfolio securities ... ", and that

> the Fund intends to write covered put and call options and purchase put and call options on U.S. Government Securities and foreign government securities that are traded on United States and foreign securities exchanges.... The Fund intends to write call options for cross-hedging purposes.

Regarding these hedging techniques, the prospectuses stated,

> The successful use of the foregoing investment practices draws upon the Adviser's special skills and experience with respect to such instruments and usually depends on the Adviser's ability to forecast interest rate and currency exchange rate movements correctly. Should interest or exchange rates move in an unexpected manner, the Fund may not achieve the anticipated benefits of futures contracts, options or forward contracts or may realize losses and thus be in a worse position than if such strate-

---

**2.** Unless otherwise indicated all references will be to the initial prospectus and Statement of

Additional Information ("SAI") dated February 21, 1992.

gies had not been used. Unlike many exchange-traded futures contracts and options on futures contracts, there are not daily price fluctuation limits with respect to options on currencies and forward contracts, and adverse market movements could therefore continue to an unlimited extent over a period of time. In addition, the correlation between movements in the prices of such instruments and movements in the price of the securities and currencies hedged or used for cover will not be perfect and could produce unanticipated losses.

The Fund's ability to dispose of its position in futures contracts, options and forward contracts will depend on the availability of liquid markets in such instruments. Markets in options and futures with respect to a number of fixed-income securities and currencies are relatively new and still developing. It is impossible to predict the amount of trading interest that may exist in various types of futures contracts, options, and forward contracts. If a secondary market does not exist with respect to an option purchased or written by the Fund over-the-counter, it might not be possible to effect a closing transaction in the option (i.e., dispose of the option) with the result that (i) an option purchased by the Fund would have to be exercised in order for the fund to realize any profit and (ii) the Fund may not be able to sell currencies or portfolio securities covering an option written by the Fund until the option expires or it delivers the underlying security, futures contract or currency upon exercise. Therefore, no assurance can be given that the Fund will be able to utilize these instruments effectively for the purposes set forth above. Furthermore, the Fund's ability to engage in options and futures transactions may be limited by tax considerations.

The Fund held significant investments in Mexican and Argentine government securities in the months leading up to December 1994. These positions were disclosed to shareholders in annual and semi-annual reports dated November 30, 1993, and May 31, 1994, respectively. The reports did not state whether the Fund had employed hedging techniques to reduce currency risk.

In December 1994, the Mexican government devalued the peso over 15 percent against the U.S. dollar and, in a change of policy, allowed the peso to float freely against the dollar. As a consequence, the value of the peso fell rapidly against the dollar, investors sold large quantities of Mexican and other Central and South American securities, and the Fund's net asset value declined dramatically.

*Procedural History*

In early 1995, plaintiffs filed several class action complaints against the Fund and related entities in the United States District Court for the Southern District of New York and the United States District Court for the Southern District of California. Plaintiffs agreed to consolidate these claims in the Southern District of New York. On July 25, 1995, plaintiffs filed a Consolidated and Supplemental Class Action Complaint ("Consolidated Complaint" or "original complaint") alleging that the name of the Fund was misleading, that the Fund had changed its investment objective without a shareholder vote, that the risks of investing in the Fund were not properly disclosed, and that the Fund had falsely represented it would use hedging techniques to reduce currency risk.

The district court granted defendants' motion to dismiss all counts of the Consolidated Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). *See In Re Alliance North American Government Income Trust, Inc. Securities Litigation,* No.95 Civ. 0330(LMM), 1996 WL 551732 (S.D.N.Y. Sept.27, 1996). The court found that the Fund's name and investment objectives could not have misled a reasonable investor and that the Fund's risks were fully disclosed. *Id.* at *3–5, 7–8. Regarding the hedging techniques claim, the court found that

in combination with the other warnings contained in the prospectus, a reasonable investor should have been fully apprised of the risks that the Fund would be unable to effectively hedge its foreign investments.

. . .

In light of these disclosures, this Court finds that even assuming that no devices were practically available to hedge against the losses the Fund suffered due to its investments in Mexican and Argentine securities, due to the explicit warnings of such devices' possible unavailability and ineffectiveness, any misstatements or omissions were immaterial as a matter of law.

*Id.* at *8–9. Accordingly, the court dismissed the Consolidated Complaint, stating it would entertain a motion for leave to replead.

Plaintiffs then moved for leave to replead pursuant to Fed.R.Civ.P. 15(a). The Proposed Amended Complaint alleges first that the prospectuses falsely stated that the Fund would use hedging devices when it knew or recklessly disregarded the fact that such devices were too expensive to be used. *See* Proposed Amended Complaint ¶¶ 88, 55–62. Specifically, it asserts

> the Fund's representations that … hedging techniques were possible and that the Fund was authorized to use [them] for the purpose of limiting foreign currency risk were false, since the Fund knew or recklessly disregard[ed] the fact that no hedging techniques were economically feasible and that the Fund would not and could not use hedging techniques to attempt to limit foreign currency risk.

Proposed Amended Complaint ¶ 61.

The Proposed Amended Complaint also alleges that the Fund's sales materials misleadingly compared the Fund to certain U.S. fixed income investments, that the prospectuses failed to disclose the Fund's investments in risky mortgage-backed derivatives, and that the Fund changed its investment objective without a shareholder vote. These claims are alleged under Sections 11, 12(2), and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77a, 77*l*, 77*o*); Sections 10(b) and 20(a) of the Securities Act of 1934 and Rule 10b–5 promulgated thereunder (15 U.S.C. §§ 78j, 78t(a)); and Sections 13(a)(3), 34(b), and 48 of the Investment Company Act (15 U.S.C. §§ 80a–13(a)(3), 80a–33(b), 80a–34(d), 80a–47). The Amended Complaint also alleges Breach of Fiduciary Duty and Common Law Fraud.

The district court denied plaintiff's motion for leave to replead. *See In Re Alliance North American Government Income Trust, Inc. Securities Litigation,* No. 95 Civ. 0330(LMM), 1997 WL 403486 (S.D.N.Y. July 18, 1997). Regarding the hedging techniques claim, the court found again that the claim was legally insufficient. The court reasoned that no reasonable investor could have been "misled after examination of the Fund's offering materials as to the risk that hedging the Fund's investments might be impossible" because the prospectuses specifically stated that "no assurance can be given that the Fund will be able to utilize these instruments effectively for the purposes set forth [in the prospectus]." *Id.* at *2.

Regarding the sales materials claim, the court found that any misstatements were immaterial as a matter of law because the materials specifically referred investors to the offering materials, which contained adequate information about the Fund's risks. *Id.* at *4. Finally, the court found that a more detailed disclosure regarding mortgage-backed derivatives would not have altered the total mix of information available to plaintiffs. *Id.* at *3.

Plaintiffs appealed from the court's denial of their motion to replead before a final judgment had been entered denying the motion. We remanded for entry of a final judgment. *Hunt v. Alliance North American Government Trust, Inc. et al.,* 97–7997 (2d Cir. Oct. 29, 1997)(summary order). After final judgment was entered, plaintiffs appealed.

On appeal, plaintiffs contend the district judge erred in denying their motion for leave to replead based on his conclusion that their Proposed Amended Complaint failed to state a claim. Plaintiffs contend that actionable claims under the federal securities laws and under common law are stated in the allegations of (1) misrepresentations in the prospectuses regarding hedging techniques, (2) misrepresentations in the sales materials, (3) undisclosed investments in mortgage-backed derivatives, and (4) an improper change of investment objective.

## DISCUSSION

■ Although Fed.R.Civ.P. 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile. *See Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1198 (2d Cir.1989). The district court denied leave on the ground that the amended pleading failed to state an actionable claim. As to one of the claims, we disagree.

### Hedging Techniques

■ In our view, the amended claim that the Fund's representations concerning the availability of hedging devices, "taken together and in context, would have misle[d] a reasonable investor," *McMahan & Co. v. Wherehouse Entertainment, Inc.,* 900 F.2d 576, 579 (2d Cir.1990), adequately pleads an actionable claim. The prospectuses stated that the Fund would be exposed to risk resulting from currency fluctuations, that hedging devices could reduce this risk, and that the Fund intended to use hedging devices. The prospectuses set forth in a ten-paragraph discussion that several hedging devices were available to the Fund Adviser— futures contracts and options on futures contracts, options on foreign currencies, forward foreign currency exchange contracts, and options on U.S. and Foreign Government securities. *See* Proposed Amended Complaint ¶ 55–60. They stated that the Fund "may" enter into futures contracts and options on futures contracts, which *"will be used* only to hedge against anticipated future changes in interest or exchange rates which otherwise might adversely affect the value of the Fund's portfolio securities ..." *See* Proposed Amended Complaint ¶ 56 (emphasis added). They also stated that

the Fund intends to write covered put and call options and purchase put and call options on U.S. Government Securities and foreign government securities that are traded on United States and foreign securities exchanges.... The Fund intends to write call options for cross-hedging purposes.

Proposed Amended Complaint ¶ 59. A reader of these passages and others reasonably could have understood them to mean that these hedging techniques were available (even if they were not foolproof) and that the Fund would attempt to hedge against currency risk by using these techniques. By alleging that the Fund managers knew (or recklessly disregarded) that these hedging techniques were not available (because they were too costly), *see* Proposed Amended Complaint ¶¶ 55, 61, plaintiffs stated an actionable claim for misrepresentation.

Defendants contend they cannot be liable because the prospectuses contain cautionary language warning that the Fund might be ineffective in reducing currency risk through hedging. They note the prospectuses warn that the "successful use of [hedging] practices ... usually depends on the Adviser's ability to forecast interest rate and currency exchange rate movements correctly." The prospectuses also stated:

The Fund's ability to dispose of its position in futures contracts, options and forward contracts will depend on the availability of liquid markets in such instruments. Markets in options and futures with respect to a number of fixed-income securities and currencies are relatively new and still developing. It is impossible to predict the amount of trading interest that may exist in various types of futures contracts, options, and forward contracts. If a secondary market does not exist with respect to an option purchased or written by the Fund over-the-counter, it might not be possible to effect a closing transaction in the option (i.e., dispose of the option).... *Therefore, no assurance can be given that the Fund will be able to utilize these instruments effectively for the [hedging] purposes set forth above.*

(emphasis added).

Defendants point to precedent asserting the impropriety of "impos[ing] liability on the basis of statements that clearly 'bespeak caution.'" *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986). The prospectus "must be read

as a whole .... the central issue ... is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have mis[led] a reasonable investor about the nature of the [securities]." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2433, 138 L.Ed.2d 194 (1997), (finding no material misrepresentation where "the prospectuses when read in their entirety [were] not overly sanguine" and contained "extensive cautionary language") (quoting *McMahan & Co. v. Wherehouse Entertainment,* 900 F.2d 576, 579 (2d Cir.1990)). The cautionary language, however, must relate directly to that by which plaintiffs claim to have been misled. *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 548 (8th Cir.1997); *Kline v. First Western Gov't Secs., Inc.,* 24 F.3d 480, 489 (3d Cir. 1994).

The cautionary language contained in the prospectus does not necessarily foreclose liability because it warned investors of a different contingency than that which plaintiffs allege was misrepresented. The prospectuses warned that the Fund's hedging maneuvers might fail, not that the Fund would have no opportunity to use hedging maneuvers. Plaintiffs allege the prospectuses were misleading as to the latter. That the prospectuses disclosed the possible inefficacy of hedges does not shield the Fund from liability for misrepresenting the availability of hedging opportunities. According to plaintiffs' theory, investors who trusted the astuteness of the Fund's managers would be reassured as to their ability to reduce risk through hedging, notwithstanding the warning that their hedging efforts might be foiled, whereas in truth, according to the Amended Complaint, the Fund would have no opportunity to reduce the risk of currency fluctuation by hedging.

Defendants contend the instant case is controlled by *Olkey,* 98 F.3d at 2, in which we affirmed on 12(b)(6) grounds dismissal of a complaint that alleged the prospectuses of three closed-end Trusts misled investors into thinking their investments would be perfectly balanced to remain stable as interest rates rose and fell, when in fact the Trusts attempted only *partial* balancing and invested disproportionately in instruments that would benefit from rising rates. *See id.,* 98 F.3d at 7. The prospectuses assured investors, for example, that the Trusts' Adviser "will manage the portfolio ... in an attempt to minimize the impact of changes in interest rates on the net asset value of the portfolio." *Id.* at 5. We found this and other assurances were counteracted by "extensive cautionary language" that stated the Trust's Adviser would not attempt perfect balancing but would instead bet that interest rates would rise.[3] *Id.* at 7. We therefore held, "While we agree that the prospectuses contain no specific statement that there was a bias in favor of rising interest rates, we find that the prospectuses implicitly and clearly communicated such a bias." *Id.* at 7. Because the prospectuses "warn[ed] investors of exactly the risk the plaintiffs claim[ed] was not disclosed," *id.* at 5, plaintiffs failed to state a claim.

In the instant case, by contrast, the prospectuses did not warn of the risk plaintiffs claim was not disclosed. Plaintiffs claim the prospectuses promised the Fund would attempt to use hedging devices when in fact it could not. Because we agree a reasonable investor could have been misled by the prospectuses, and would have considered the availability of hedging devices important in deciding whether to purchase Fund shares, *see Basic Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), we find the Proposed Amended Complaint states a claim for which relief can be granted. We therefore reverse the district court's order denying leave to replead this claim.

**3.** The prospectuses warned, for example, that "[a] significant decline in interest rates could lead to a significant decrease in the Trust's net income and dividends while a significant rise in interest rates could lead only to a moderate increase in the Trust's net income and dividends."

*Id.* at 6. Based on this passage we inferred, "The only way reasonable investors would then invest in the Trusts would be if they believed that the probability of rates rising exceeded the probability of interest rates dropping." *Id.* at 7.

*Other Claims*

■ We find no error in the district court's conclusion that the other claims failed under Rule 12(b)(6). Plaintiffs contend they should be permitted to amend their complaint to allege that the Fund's advertising materials and annual reports misleadingly described the Fund as comparable to various U.S. fixed income investments, including U.S. Treasury instruments and two Lehman Brothers indexes. Proposed Amended Complaint ¶¶ 67, 73. The district court found no reasonable investor could have been misled by the advertisements when read in conjunction with the prospectuses and related offering materials.

The district court properly denied leave to replead this claim. "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1032 (2d Cir.1993). Minimal diligence in this case would have included consulting the prospectuses, for the challenged brochures "direct[ed] the potential investor to the Prospectus, the single most important document and perhaps the primary resource an investor should consult in seeking ... information [about the Fund's risks]."[4] *Brown,* 991 F.2d at 1032. Moreover, the brochures that plaintiffs claim contained unwarranted comparisons to various fixed income investments, *see* Proposed Amended Complaint ¶¶ 73, warned that such investments have different characteristics than the Fund:

> Money market funds seek a stable share price and CDs and Treasury securities are insured and generally have fixed interest rates while the Trust's principal and yield will fluctuate so that shares, when redeemed, may be worth more or less than their original cost. . . .

In light of these disclaimers, no reasonable investor could have been misled by the sales materials as to the nature of his investment.

■ Plaintiffs also contend that a chart included in the Fund's annual report of No-

vember 30, 1994, misleadingly compared the Fund's risks to those of the Lehman Brothers Aggregate Index and the Lehman Brothers Intermediate–Term Government Index. *See* Proposed Amended Complaint ¶ 67. While the annual report in question did not expressly refer investors to the prospectuses, nothing in the chart or the report purported to contain information regarding the Fund's risks. The chart purported only to compare the Fund's *returns* to those of the Lehman Brothers indexes. No reasonable investor could have viewed this chart as an exhaustive description of the Fund's *risks*. Any investor with "minimal diligence ... should have discovered the truth" about the Fund's risks by consulting the prospectuses. *Brown,* 991 F.2d at 1032. Thus the Proposed Amended Complaint fails to state a claim that the sales materials or annual reports contained material misrepresentations of fact.

■ Plaintiffs contend they should be permitted to amend the complaint to allege that the prospectuses failed to disclose that the Fund would invest in mortgage-backed derivatives called "collateralized mortgage obligations." Plaintiffs contend that because these instruments have distinct attributes (including far greater risk) than the underlying assets from which they are created, they should have been identified as a separate and distinct security in the Fund's registration statements and prospectuses. Proposed Amended Complaint ¶¶ 74–83.

The contention fails because the prospectuses contained disclosures broad enough to cover these instruments. The prospectuses disclosed that the Fund would invest in "government guaranteed mortgage-related securities." Because the Proposed Amended Complaint defines mortgage-backed derivatives as "*securit[ies]* whose value derives from an underlying pool of mortgages," Proposed Amended Complaint ¶ 74 (emphasis added), the disclosure that the Fund would invest in "mortgage-related securities" is broad enough to cover the instruments in

---

4. The challenged brochures stated:

> This brochure is authorized for distribution only when accompanied or preceded by a prospectus for the Fund, which includes complete

information about investment policies, sales charges, expenses and other matters of importance to prospective investors. Please read it carefully before you invest or send money.

question. Moreover, the prospectuses refer potential investors to the Statements of Additional Information, which contains extensive descriptions of the mortgage-related instruments purchased. The SAIs state:

*U.S. Government Guaranteed Mortgage-Related Securities—General.* Mortgages backing the U.S. Government guaranteed mortgage-related securities purchased by the Fund include, among others, conventional thirty year fixed rate mortgages, graduated payment mortgages, fifteen year mortgages and adjustable rate mortgages. All of these mortgages can be used to create pass-through securities. A pass-through security is formed when mortgages are pooled together and the undivided interests in the pool or pools are sold. The cash flow from the mortgages is passed through to the holders of the securities in the form of periodic payments of interest, principal and prepayments (net of a service fee). Prepayments occur when the holder of an individual mortgage prepays the remaining principal before the mortgage's scheduled maturity date. As a result of the pass-through of prepayments of principal on the underlying securities, mortgage-backed securities are often subject to more rapid prepayment of principal than their stated maturity would indicate. Because the prepayment characteristics of the underlying mortgages vary, it is not possible to predict accurately the realized yield or average life of a particular issue of pass-through certificates. Prepayment rates are important because of their effect on the yield and price of securities. Accelerated prepayments adversely impact yields for pass-throughs purchased at a premium (i.e., a price in excess of principal amount) and *may involve additional risk of loss of principal* because the premium may not have been fully amortized at the time the obligation is repaid.

SAI at 4 (emphasis added). Because the Fund's representations concerning mortgage-backed derivatives "taken together and in context, would [not] have misle[d] a reasonable investor," *McMahan & Co.*, 900 F.2d at 579, the district court properly denied leave to amend the complaint to plead this claim.

■ Plaintiffs contend they should be permitted to plead in the Proposed Amended Complaint that the Fund deviated from its investment objective of "prudent investment risk" without a shareholder vote, in violation of Section 13(a)(3) of the Investment Company Act, 15 U.S.C. § 80a–13(a)(3), when it increased its investments in "speculative" Mexican and Argentine assets and mortgage-backed derivatives to 70% of its holdings. Proposed Amended Complaint ¶¶ 77, 61, 62, 124. The district court did not address this contention in its order denying leave to replead. In its order dismissing the original complaint, it dismissed a similar claim under Fed.R.Civ.P. 12(b)(6).

The Fund's investment objective, according to the prospectuses, was "to seek the highest level of current income, consistent with what the Fund's Adviser considers to be prudent investment risk, that is available from a portfolio of debt securities issued or guaranteed by the governments of the United States, Canada, and Mexico...." According to the prospectuses the investment objective "may not be changed without shareholder approval." *See also* 15 U.S.C. § 80a–13(a)(3).[5]

There can be no violation of Section 13(a)(3) because plaintiffs do not properly allege that the Fund's investment objective was changed. The prospectuses defined the objective in vague, subjective terms, as that which the Fund Adviser "considers to be a prudent investment risk." Plaintiffs allege no facts that would support a claim that the Fund Adviser invested in any instrument he considered an imprudent risk.

---

**5.** Section 13(a) of the Investment Company Act states,

No registered investment company shall, unless authorized by the vote of a majority of its outstanding voting securities ... (3) deviate from its policy in respect of concentration of investments in any particular industry or group of industries as recited in its registration statement, *deviate from any investment policy which is changeable only if authorized by shareholder vote,* or deviate from any policy recited in its registration statement pursuant to section 80a–8(b)(3) of this title.

15 U.S.C. § 80a–13(a) (emphasis added).

The cases plaintiffs cite in support of the proposition that "prudent investments" must be objectively determined are inapposite. Several of these cases address the statutory requirement under ERISA that plan managers diversify plan assets unless under the circumstances it is clearly prudent not to do so. *See* 29 U.S.C. § 1104(a)(1)(c); *Reich v. King,* 861 F.Supp. 379, 385 (D.Md.1994), *Marshall v. Teamsters Local 282 Pension Trust Fund,* 458 F.Supp. 986, 988 (E.D.N.Y. 1978), *Brock v. Citizens Bank of Clovis,* 1985 WL 71535 (D.N.M.1985), *aff'd* 841 F.2d 344 (10th Cir.1988). Two other cases cited address fiduciary duties under state trust law. *See Withers v. Teachers' Retirement System of the City of New York,* 447 F.Supp. 1248, 1255 (S.D.N.Y.1978); *Matter of Estate of Collins,* 72 Cal.App.3d 663, 667, 139 Cal.Rptr. 644, 648 (1977). Thus the district court properly denied leave to amend the complaint to plead this claim.

## CONCLUSION

We reverse the portion of the district court's order denying leave to file the Amended Complaint insofar as it asserted a claim of fraud as to the availability of hedging techniques. As to the other allegations, we affirm.