**Michael HALPERIN, M.D., Donald Kern, D.D.S. and all other plaintiffs similarly situated, Plaintiffs–Appellants,**

v.

**EBANKER USA.COM, INC., Evision USA.Com, Inc., American Fronteer Financial Corporation, Fai Chan, Tong Wan Chan, Robert Trapp, Kwok Jen Fong, David Chen, Gary Cook, Jeffrey Busch, and Robert Jeffers, Jr., Defendants–Appellees.**

No. 01–7440.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 2001.

Decided July 9, 2002.

Lawrence A. Steckman, New York, N.Y. (Debra J. Guzov, Darren L. Ofsink, Guzov & Rella, L.L.C., New York, NY, of counsel), for Plaintiffs–Appellants.

Bruce H. Schneider, New York, N.Y. (Charles G. Moerdler, Heidi Balk, Stroock & Stroock & Lavan, LLP, New York, NY, of counsel), for Defendants–Appellees.

Before OAKES, CARDAMONE, and POOLER, Circuit Judges.

CARDAMONE, Circuit Judge.

This appeal involves investors who by purchasing securities took a risk for the purpose of securing an economic advantage but, failing to exercise prudence, instead suffered a loss. Plaintiffs claim defendants, sellers of the securities, defrauded them; when in fact what plaintiffs had done was to make a bad investment. Plaintiffs Michael Halperin, M.D., and Donald Kern, D.D.S., appeal from a judgment of the United States District

Court for the Southern District of New York (Martin, J.), entered March 26, 2001 granting defendants' motion to dismiss their complaint for failure to state a claim upon which relief could be granted.

Although the district court dismissed the 12–count securities fraud complaint in its entirety, plaintiffs appeal the dismissal of only eight of their claims. In a separate summary order filed today, we affirm the dismissal of seven of these eight counts. We write to address an issue in the remaining eighth count that warrants more detailed analysis: whether plaintiffs stated a claim that defendants fraudulently misrepresented the future registration of certain securities with the Securities and Exchange Commission (SEC).

## BACKGROUND

This is a class action suit against three corporations and several individuals who served as officers and/or directors of those corporations. Plaintiffs, representing four subclasses of purchasers of stock from defendants, filed their 12–count complaint alleging fraud and other wrongful conduct under both state and federal law.

The relationship between the three defendant companies is as follows: eVision USA.COM, Inc. (eVision) is a public holding company; American Fronteer Financial Corporation (American Fronteer), a wholly-owned subsidiary of eVision, is a private corporation engaged in stock brokerage activities; and eBanker USA.COM, Inc. (eBanker), is a private corporation run by American Fronteer under a management agreement. Since April 1999 eVision has owned enough preferred stock in eBanker to cast 73 percent of the votes in the election of eBanker's directors, giving eVision effective control over eBanker.

Plaintiffs' claim of fraudulent misrepresentation stems from the issuance by defendants of two offering memoranda for the sale of eBanker securities. On May 26, 1998 Fronteer Development (now eBanker) issued a Confidential Private Offering Memorandum (1998 Offering Memorandum) advertising the sale of debentures, common stock, and warrants exercisable for the purchase of common stock in the future. The 1998 Offering Memorandum acknowledged on the first page and elsewhere that the offered units had not been registered with the SEC under the Securities Act of 1933 or with any state securities commission under state securities laws. Without such registration, the memo noted, transfer of the shares were subject to restrictions. Thus, the memo stated that "[t]here is no public or other market for the units ... [and so] investors must expect to retain ownership of the units and bear the economic risks of their investment for an indefinite period." Similar warnings appeared throughout the memo.

However, with respect to eBanker's future plans, the 1998 Offering Memorandum also stated that

[t]he Company intends to endeavor to file registration statements with the SEC to register the Convertible Debentures [and Common Stock] for resale under the 1933 Act and under the Securities Exchange Act of 1934 ... as soon as practicable, but in no event sooner than 12 months following the Final Closing Date, and may submit an application to list the Convertible Debentures [and Common Stock] on a national securities exchange. However, there can be no assurance that the Company will file a registration statement with the SEC or that the SEC will declare the registration statement effective or that any listing on a national securities exchange will occur at any time.

On March 3, 1999 the eBanker Board of Directors authorized another private offering. According to the accompanying memorandum (1999 Offering Memorandum), the units for sale each consisted of one share of common stock and one detachable warrant. In its first few pages, the 1999 Offering Memorandum warned in bold lettering that the units had not been registered with the SEC or any state securities commission. This memo contained language virtually identical to the 1998 Offering Memorandum regarding the company's intent to endeavor to register its securities for resale under the federal securities laws, observing that there could be "no assurance that such registrations will occur." Both memos advised potential investors that the units should only be purchased by persons of substantial means who are not dependent upon liquidity in their investment and who could bear its entire loss.

Although both memos stated that there could be "no assurance" that the securities would be registered with the SEC, plaintiffs assert, first, that the cautionary language was mere boilerplate and that eBanker "viewed registration of its shares as impractical without an [initial public offering (IPO) ] and that it had no intention of commencing a registration in the absence of an IPO." Hence, plaintiffs contend that defendants' failure to state unequivocally in the 1998 and 1999 Offering Memoranda that registration was contingent on an IPO constituted a material omission and rendered the documents untruthful.

Second, plaintiffs declare that eBanker knew an IPO was unlikely, which in turn made registration unlikely. In support of this allegation, they point to a memo addressed to eBanker's Board of Directors that spells out the following obstacles to an IPO of eBanker stock: 1) overhang on the market for eBanker shares caused by the number of outstanding warrants; 2) the need to register as an investment company under the Investment Company Act of 1940 in order to conduct an IPO, which would be a disincentive to institutional investors; 3) eBanker's investments in foreign securities, which would also be a disincentive to institutional investors; 4) overlap of employees between eBanker and American Fronteer, another disincentive to institutional investors; and 5) difficulty in valuation of eBanker. Plaintiffs maintain that eBanker's failure to mention these "substantial impediments" in the 1998 and 1999 Offering Memoranda constituted fraud.

## DISCUSSION

### I Standard of Review

■ We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6). *Kalnit v. Eichler,* 264 F.3d 131, 137 (2d Cir.2001). In doing so, we accept all of plaintiffs' allegations as true and draw all reasonable inferences in their favor, upholding the dismissal only when it plainly appears that no set of facts may be proved by plaintiffs in support of their claims that would entitle them to relief. *Id.* at 137–38.

### II Fraudulent Misrepresentation Under § 10(b) and Rule 10b–5

■ Plaintiffs bring the claim of fraudulent misrepresentation under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2000), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (2000), promulgated thereunder. Rule 10b–5 states, in part, that it is "unlawful for any person ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not

misleading." 17 C.F.R. § 240.10b–5(b). To state a cause of action under § 10(b) and Rule 10b–5, the complaint must allege that, in offering to buy or sell securities, defendant, acting with scienter, made a false statement or omitted a material fact, so that plaintiff, acting in reliance on defendant's false statement or omission, suffered injury and damages. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.), *cert. denied, sub nom. Scholastic Corp. v. Truncellito*, —— U.S. ——, 122 S.Ct. 678, 151 L.Ed.2d 590 (2001). An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); *accord Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir.2001); *see also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir.1994) ("A fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares [of stock].").

■ Recognizing that the materiality of an omission is a mixed question of law and fact, courts often will not dismiss a securities fraud complaint at the pleading stage of the proceedings, unless reasonable minds could not differ on the importance of the omission. *See, e.g., TSC Indus.*, 426 U.S. at 450, 96 S.Ct. 2126; *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir.2000); *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 (9th Cir.1996). Certain alleged misrepresentations in a stock offering are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering. *See, e.g., Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 548 (8th Cir.1997); *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 358 (4th Cir.1996); *Saltzberg v. TM Sterling/Austin Assocs.*, 45 F.3d 399, 400 (11th Cir.1995) (per curiam); *Kaufman v. Trump's Castle Funding (In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.)*, 7 F.3d 357, 371 (3d Cir.1993). We and other courts have referred to this rule of law as the "bespeaks caution" doctrine. *See, e.g., Parnes*, 122 F.3d at 548; *Anderson*, 89 F.3d at 1408; *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir.1991); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986). Consequently, when cautionary language is present, we analyze the allegedly fraudulent materials in their entirety to determine whether a reasonable investor would have been misled. The touchstone of the inquiry is not whether isolated statements within a document were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered. *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990).

Two of our recent decisions are particularly helpful in guiding analysis in the instant case. In both cases, plaintiffs were investors who alleged fraudulent misrepresentation in the sale of securities. They claimed defendants' sales materials misrepresented the risks associated with the securities. Like the eBanker defendants, defendants in both of these cases countered that they were not liable because they had included cautionary language in the sales materials. In one case, *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723, 724–25 (2d

Cir.1998), we reversed the dismissal by the district court of one of plaintiffs' claims, ruling that a reasonable investor would have been misled by the representations in defendants' prospectuses. In the other case, *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5, 9 (2d Cir.1996), we affirmed the dismissal by the district court of plaintiffs' claims of fraudulent misrepresentation on the grounds that the allegedly misleading materials bespoke caution.

Not surprisingly, plaintiffs contend their cause of action mirrors the one in *Hunt*, while defendants insist *Olkey* is the appropriate analogue. We do not view these cases as in conflict. Rather, we think they present a consistent approach to analyzing claims of fraudulent misrepresentation in securities sales materials containing cautionary language. Following that approach, we agree with the trial court that plaintiffs in the instant case have failed to state a claim of fraudulent misrepresentation.

### III Lessons from *Olkey & Hunt*

In *Olkey*, we affirmed the dismissal of plaintiffs' fraud claims after finding that the allegedly fraudulent prospectuses included extensive cautionary language. 98 F.3d at 5. Plaintiffs, investors in three of defendants' investment trusts, asserted that defendants' prospectuses represented that the trusts would invest in securities that would balance each other out so that returns would remain relatively steady regardless of whether interest rates rose or fell. *Id.* at 3–4. Plaintiffs further averred that despite this representation, the defendants' investment strategy actually was biased toward rising interest rates, so that investors would lose money if interest rates fell. *Id.* at 4. As things turned out, interest rates dropped dramatically and the investment trusts suffered huge losses. Although we agreed with plaintiffs that no

specific statement in the prospectuses expressed a bias favoring rising interest rates, we found they clearly communicated such a bias. *Id.* at 7. Because the prospectuses, when read as a whole, bespeak caution, *id.* at 5, we affirmed the district court's dismissal of the complaint for failure to state a cause of action upon which relief could be granted.

In October 1998—exactly two years after handing down *Olkey*—we decided another case involving an allegedly fraudulent misrepresentation in the sale of securities. In *Hunt*, shareholders sued Alliance North American Government Income Trust, Inc., an investment fund, and several related individuals and entities for fraud after the value of their shares plummeted in the wake of the Mexican peso's collapse in December 1994. 159 F.3d at 724. The plaintiffs claimed that the fund's prospectuses had stated misleadingly that the fund manager "intend[ed]" to use hedging techniques to minimize the negative impact of currency exchange rate fluctuations on the fund. *Id.* at 725.

In reversing the district court's dismissal of the fraudulent misrepresentation claim, we acknowledged the cautionary language in the prospectuses. Specifically, the prospectuses warned that an illiquid market could prevent the fund from selling any futures contracts it may have held, thereby preventing the fund from benefiting from hedging techniques. *Id.* at 726. But we thought this language did not apprise plaintiffs of the risk that the hedging techniques would be too expensive to be used at all. *Id.* at 729. Further, we found the extensive discussion of hedging would have led prospective investors to believe "that these hedging techniques were available (even if they were not foolproof)." *Id.* at 728. Given that plaintiffs alleged that the undisclosed risk was the inability to

engage in hedging, *Hunt* concluded that plaintiffs had stated a cause of action for which relief could be granted. *Id.* at 729.

As both *Olkey* and *Hunt* recognize, the presence of cautionary language is a relevant factor to be considered in deciding whether a reasonable investor could have been misled. Despite the difference in their outcomes, both of these cases analyze claims of misrepresentation in the sale of securities—when the allegedly fraudulent sales materials contain cautionary language—in the same fashion. First, they identify the allegedly undisclosed risk. For example, in *Olkey*, the risk was the investment loss due to the portfolios' bias toward rising interest rates. In *Hunt*, the risk was the drop in the value of the investment due to the inability of the fund to engage in hedging against fluctuations in exchange rates. Second, they read the allegedly fraudulent materials—including the cautionary language—to determine if a reasonable investor could have been misled into thinking that the risk that materialized and resulted in his loss did not actually exist.

*Olkey* quotes extensively from the prospectuses to support its finding that the materials "when read in their entirety are not overly sanguine." 98 F.3d at 5. *Hunt* takes a similar contextual approach to interpreting the allegedly misleading prospectuses. In *Hunt*, we specifically note the prospectuses' lengthy discussions of the way in which hedging could prevent losses. 159 F.3d at 728. The detailed explanation of hedging techniques in the prospectuses, as well as the use of language implying a present ability to hedge against exchange rate fluctuations, could have led a reasonable investor to conclude that the only risk was in the effectiveness of hedging, not in its availability. *Id.* at 728–29; *see also Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 203 (5th Cir.

1988) (explaining that "emphasis and gloss can, in the right circumstances, create liability" under Rule 10b–5).

■ Cautionary language in securities offerings is just about universal. Thus, the key question a district court must decide when determining whether to grant a motion to dismiss a securities fraud complaint is whether plaintiffs have overcome the existence of such language. Plaintiffs may do this by showing, for example, that the cautionary language did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss. *See, e.g., Hunt*, 159 F.3d at 729. Of course, considering the enormous number of different settings in which securities fraud litigation arises, that question has to be decided on a case-by-case basis. In all cases, however, the court must keep in mind that a complaint fails to state a claim of securities fraud if *no reasonable investor* could have been misled about the nature of the risk when he invested.

## IV Following the *Olkey/Hunt* Approach

■ Turning now to the case at hand, plaintiffs insist that the 1998 and 1999 Offering Memoranda did not state that future registration of the eBanker securities was contingent on an IPO, and neglected to mention that an IPO was unlikely due to various structural impediments. This is significant, plaintiffs explain, because they bought the unregistered securities with the expectation that the stocks would later be registered with the SEC. Registration would increase the value of the securities and also provide plaintiffs with an exit strategy. Hence, the relevant risk was that the stocks might not be registered.

But here the offering memoranda explicitly warned of this risk. The third page of

the 1998 Offering Memorandum states in capital letters and bold print that

> The purchase of a unit involves substantial risks. Such purchase is suitable only for persons of substantial means who have no need for liquidity in their investment and who can sustain the loss of their entire investment. There can be no assurance that the company's securities will have any value or that a liquid market for those securities will ever develop....
>
> . . .
>
> The units offered hereby have not been registered under the 1933 Act or the securities laws of certain states, and are being offered and sold in reliance on exemptions from the registration requirements of the 1933 Act and such laws.... The units are subject to restriction on transferability and resale, and may not be transferred or resold except as permitted under the 1933 Act and applicable state securities laws pursuant to registration or exemption therefrom.
>
> There is no public or other market for the units. The units are subject to restrictions on transfer. Therefore, investors must expect to retain ownership of the units and bear the economic risks of their investment for an indefinite period.

(typeface altered). In stark contrast to these express warnings, the only references to eBanker's plans to register the securities for resale appear farther into the document and in regular print, and those plans are couched in hortatory language (*i.e.,* eBanker "intends to endeavor" to register the shares) surrounded by warnings that registration cannot be assured. Moreover, the statements about possible future registration are qualified by the immediately proceeding sentences that indicate that eBanker's status under the Investment Company Act of 1940 will impact the decision to register. A reasonable investor therefore is put on notice that, at the very least, registration is not guaranteed and is in fact contingent on certain business developments. The 1999 Offering Memorandum is substantially like the 1998 Offering Memorandum in these respects. When read in their entirety, these documents not only bespeak caution, they shout it from the rooftops, so to speak.

 Plaintiffs in the instant case believe *Hunt* holds that cautionary language "will not protect defendants where they know an event is unlikely due to specific facts, but they fail to disclose those facts to investors." Unlike the prospectuses in *Hunt,* however, eBanker's 1998 and 1999 Offering Memoranda did not gloss over the relevant risk, focus investors' attention elsewhere, and thereby lead them down some primrose path. *Cf. Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985) (concluding that reference to specific projections for future growth would lead a reasonable investor to expect such performance in the future). The *Hunt* prospectuses detailed the operation of the hedging techniques but neglected to advise potential investors that the fund was not able to engage in those techniques. Such omission is misleading. In contrast, the eBanker offering memoranda each contained brief, noncommittal references to the possibility of later registration. Even this possibility was tempered by numerous warnings that the securities were not presently registered for resale and there could be no assurance that they ever would be registered. The cautionary language addresses the relevant risk directly, and therefore neither offering memorandum was misleading. A reasonable person who hopes to have an exit strategy and yet invests after being informed that the company "intends to endeavor to register [the

stock] for resale" is betting that registration will occur. *SEC v. Monarch Fund*, 608 F.2d 938, 942 (2d Cir.1979) ("Certainly the ability of a court to find a violation of the securities laws diminishes in proportion to the extent that the disclosed information is so general that the recipient thereof is still undertaking a substantial economic risk that his tempting target will prove to be a 'white elephant.' "). An offeror is not liable for securities fraud simply because the investment did not turn out as the investor hoped. *Olkey*, 98 F.3d at 8 ("Not every bad investment is the product of misrepresentation.").

We also reject plaintiffs' declaration that the offering memoranda fraudulently omitted any mention of the substantial impediments to registration. The allegedly omitted facts were either disclosed or implied in the offering memoranda. For instance, both memos disclosed eBanker's plans to invest in foreign companies; both also reveal the overlapping management of eBanker and several affiliated entities. In addition, the 1999 Offering Memorandum disclosed the existence of outstanding warrants and explained that this would result in "immediate and substantial dilution to [ ] investors." While the 1998 Offering Memorandum contained no such statement, at the time of that first offering there would not have been an overhang yet on the market for eBanker stock. As for the alleged difficulty of valuation, that should have been obvious to a prospective investor given, *inter alia*, the types of loans eBanker financed. Finally, each offering memorandum indicated that any registration decision would be contingent on eBanker's status under the Investment Company Act of 1940. Given these substantial disclosures, it is unnecessary to decide whether any of the alleged impediments to registration were

material. On this record consequently, plaintiffs have not stated a cause of action for securities fraud for which relief may be granted.

## CONCLUSION

Accordingly, for the reasons stated above and in the separately filed order, the judgment dismissing plaintiffs' securities fraud complaint is affirmed.