*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0228a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

J&R MARKETING, SEP, et al.,

        *Plaintiffs-Appellants,*

    *v.*

GENERAL MOTORS CORP., et al.,

        *Defendants-Appellees.*

No. 07-1411

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10201—Nancy G. Edmunds, District Judge.

Argued: February 7, 2008

Decided and Filed: June 26, 2008

Before: KENNEDY, MARTIN, COLE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jacob A. Goldberg, FARUQI & FARUQI, Huntington Valley, Pennsylvania, for Appellants. Robert J. Kopecky, KIRKLAND & ELLIS, Chicago, Illinois, for Appellees. **ON BRIEF:** Jacob A. Goldberg, FARUQI & FARUQI, Huntington Valley, Pennsylvania, Jamie R. Mogil, FARUQI & FARUQI, New York, New York, Stephen F. Wasinger, Royal Oak, Michigan, for Appellants. Robert J. Kopecky, Timothy A. Duffy, KIRKLAND & ELLIS, Chicago, Illinois, Dennis M. Barnes, BARRIS, SOTT, DENN & DRIKER, Detroit, Michigan, for Appellees.

---

## AMENDED OPINION

---

    KENNEDY, Circuit Judge. The court issued an initial opinion in this case on March 5, 2008. *J&R Marketing, SEP, et al. v. General Motors Corp, et al.*, 519 F.3d 552 (6th Cir. 2008). The plaintiffs petitioned for rehearing and rehearing en banc based on three grounds. One of those grounds was that the panel failed to appreciate that statements made in GMAC's 2003 10-K were incorporated in the plaintiffs' offering documents because, while the 2003 10-K was filed later in time, the offering documents incorporated later-filed documents. Finding that, as the defendants concede, we must address this issue, we grant rehearing with respect to that issue and amend our initial opinion as follows. The judgment of the court as well as the rest of the opinion, however, remains unaffected.

    Section II.A.2.c should be replaced with the following paragraphs:

    c. GMAC's Statements Regarding GM's Performance

1

Plaintiffs also allege that GMAC included materially misleading statements in its 2003 10-K, which was filed in early 2004. The specific statement at issue is as follows:

> [GMAC], beginning in the third quarter of 2003, has benefited from a significant reduction in unsecured borrowing spreads consistent with the overall improvement in the capital markets and GM as an issuer, in particular. The outlook for GM improved partially due to the significant progress made in funding GM's pension and postretirement obligations.

J.A. at 129. This statement was at best misleading, according to plaintiffs, because GM had in fact guaranteed Delphi's pension liability through 2007, which could have amounted to billions of dollars and because GM was improperly recognizing supplier credits as income earlier than it should have been, thereby inflating its cash flows. [1] GMAC's statement that it had "benefited from a significant reduction in unsecured borrowing spreads" because of the overall improvement of GM referred to the fact that market prices of securities in general, and GM's securities in particular, rose in the third quarter of 2003. Similarly, the statement about the "outlook" for GM reflected the views of ratings agencies and analysts in 2003.

These statements, however, are immaterial as a matter of law when read in context of the entire 2003 10-K. Materiality is determined by analyzing the statement at issue in the context of the entire document. *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002) ("The touchstone of the inquiry is not whether isolated statements within a document were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered."). In the same 2003 10-K, GMAC disclosed that its "unsecured credit spreads" were near historic highs during the first two quarters of 2003 "due to weakness in the automotive sector of the corporate debt markets as well as specific concerns regarding the financial outlook of GM." Viewing these statements together, no reasonable investor could have been misled into believing that GMAC was representing that GM's financial health was anything more than tenuous.

Moreover, GMAC's statement is a very vague, generally optimistic statement, which also renders it immaterial as a matter of law. First, there is no doubt that the topic was important. GMAC had previously reported that its credit rating suffered because of concerns regarding GM's ability to fund GM's pension obligations. GMAC was now reporting that GM had made "significant progress" in funding those obligations.

The importance of the topic of the representation does not, however, automatically make it material. In *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005), the Court confronted different statements about the same topic, namely product quality. *Compare* 399 F.3d at 6701-71, *with id.* at 674. The Court found that, while the topic was important, materiality hinges on what particularly was represented. If the representations were just loosely optimistic and "lacked a standard against which a reasonable investor could expect the[ representations] to be pegged[, then they] are too squishy, too untethered to anything measurable," to be considered material. *Id.* at 670-71. When the representations are more concrete, such as references to "objective data," then those representations may be material. *Id.* at 674.

---

[1] We note that the district court concluded this statement was non-actionable because it found no duty pertaining to subsidiaries regarding statements about a parent corporation. The district court, however, was more focused on liability for omissions, rather than liability for misleading statements or misstatements. When an issuer undertakes to speak on any subject, even its parent company, Sections 11 and 12 impose strict liability for material statements that are in fact misleading or false. *See, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496 (5th Cir. 2005); *Davis v. Avco Fin. Servs., Inc.*, 739 F.2d 1057, 1064 n.2 (6th Cir. 1984).

The statement at issue in this case was too vague and immeasurable to consider material. The plaintiffs do not contend that GM had in fact made no progress funding its pension obligations. The plaintiffs only contend that because GM had guaranteed Delphi's potentially large pension liability for a certain period of time, the pension funding progress could not be called "significant." The plaintiffs then allege that because the progress was not in fact "significant," GMAC incorrectly misrepresented that GM's outlook had "improved." It is impossible, however, to measure whether the progress was in fact "significant." In the end, any progress could be called significant given the large pension liability GM faced, and investors understand that management is generally optimistic. A representation that progress was "significant" is the same as a representation that a company's products are "the best," which is considered immaterial as a matter of law. *Id.* at 670-71. GMAC only made "vague assertions of the condition of [GM] on which no reasonable investor would rely." *See Taubenfeld v. Hotels.com*, 383 F. Supp.2d 587, 593 (N.D. Tex. 2004).

Section II.B.2 should be replaced with the following paragraph:

2. GMAC's Statements in the 2003 10-K

As analyzed in Section II.A.2.c above, the plaintiffs have no claim regarding the immaterial, optimistic statements in GMAC's 2003 10-K.

Section II.B.3 should be replaced with the following paragraph:

3. GMAC's Statements in the 2004 10-Qs

Plaintiffs had asserted in their complaint that the financial results in GMAC's first three 10-Qs for 2004 were materially misstated. The district court disagreed with plaintiffs, finding that the misstatements in the 10-Qs were immaterial as a matter of law. On appeal, the plaintiffs initially renewed their argument that the misstatements in the 2004 10-Qs were material. In our first opinion in this case, we declined to address any claims regarding documents filed in 2004, namely the 2003 10-K and the 2004 10-Qs, because the plaintiffs' offering was in 2003. The plaintiffs then moved for rehearing partially based upon the fact that the offering documents in 2003 had, as permitted by the laws and regulations applicable to the sort of offering in this case, automatically incorporated any documents filed later with the SEC. The plaintiffs' only argument, however, was that because the offering documents had incorporated later-filed documents, the panel had to address the statement in the 2003 10-K. Pet. for Reh'g at 12-14 ("The Panel avoid[ed] addressing whether defendants' statement that GM's financial outlook was improving was actionable. . . . That statement was incorporated by reference [] into all of the Offering Materials issued after GMAC filed its 2003 10-K with the SEC, including all the prospectus supplements and pricing supplements defendants issued and filed during the Class Period."). By failing to ask for reconsideration of the 2004 10-Qs, the plaintiffs have waived any argument regarding those 10-Qs.[2]

---

[2] The plaintiffs did include a request for us to reconsider the 2004 10-Qs in their reply to the defendants' response to the plaintiffs' petition for rehearing. Petitions for rehearing, however, are like initial briefs asking the court to reconsider certain issues. Federal Rule of Appellate Procedure 40 states that, "[t]he petition must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and *must argue in support of the petition*." This Rule means that not only does the petitioner have to point out the alleged mistake, but it must also argue both why it was a mistake and why such a mistake warrants rehearing. A reply to the defendants' response to the petition for rehearing, therefore, are like a reply brief in an ordinary appeal. A reply brief, however, cannot be used to raise new issues that were not raised in the original brief, in this case a petition for rehearing. *See, e.g.*, *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 589 n.4 (6th Cir. 2008).