*Smith v. The Gap, Inc.*

# United States Court of Appeals
# for the Second Circuit

August Term 2025
Argued: March 9, 2026
Decided: May 28, 2026

No. 25-1130

MICHAEL SMITH, JEFFREY WILLIAMS,

*Plaintiffs-Appellants*,

v.

THE GAP, INC., SONIA SYNGAL, KATRINA O'CONNELL,

*Defendants-Appellees.*[*]

On Appeal from the United States District Court
for the Eastern District of New York
No. 22-cv-7371
Diane Gujarati, *Judge*.

Before:   PARK, NATHAN, and KAHN, *Circuit Judges*.

In August 2021, Gap launched BODEQUALITY, an initiative to increase plus-size clothing options in Old Navy stores. Gap overestimated the demand for plus-sized clothes, so it had to sell surplus inventory at steep discounts. In early 2022, Gap rolled back

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

plus-sized offerings in stores, and in May, it disclosed that its financial results for the first quarter of 2022 had been negatively impacted by missteps related to BODEQUALITY.

Plaintiffs brought this putative securities class action on behalf of investors who purchased Gap stock between November 24, 2021, and July 11, 2022. They alleged that Defendants—Gap and two of its senior executives during the class period—violated the Securities Exchange Act by failing to disclose problems with BODEQUALITY in statements to investors. The United States District Court for the Eastern District of New York (Gujarati, *J.*) dismissed the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). We **AFFIRM** because the challenged statements were not false or misleading, and Plaintiffs failed to plead scienter with particularity.

------

JONATHAN STERN, The Rosen Law Firm, P.A., New York, NY (Jacob A. Goldberg, The Rosen Law Firm, P.A., Jenkintown, PA, *on the brief*), *for Plaintiffs-Appellants*.

PAUL ALESSIO MEZZINA, King & Spalding LLP, Washington, DC (Samantha J. Kavanaugh, King & Spalding LLP, Miami, FL; Israel Dahan, King & Spalding LLP, New York, NY, *on the brief*), *for Defendants-Appellees*.

------

PARK, *Circuit Judge*:

In August 2021, Gap launched BODEQUALITY, an initiative to increase plus-size clothing options in Old Navy stores. Gap overestimated the demand for plus-sized clothes, so it had to sell surplus inventory at steep discounts. In early 2022, Gap rolled back

2

plus-sized offerings in stores, and in May, it disclosed that its financial results for the first quarter of 2022 had been negatively impacted by missteps related to BODEQUALITY.

Plaintiffs brought this putative securities class action on behalf of investors who purchased Gap stock between November 24, 2021, and July 11, 2022. They alleged that Defendants—Gap and two of its senior executives during the class period—violated the Securities Exchange Act by failing to disclose problems with BODEQUALITY in statements to investors. The United States District Court for the Eastern District of New York dismissed the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). We affirm because the challenged statements were not false or misleading, and Plaintiffs failed to plead scienter with particularity.

## I. BACKGROUND

A. Factual Background

The Gap, Inc. ("Gap") is a clothing retailer and one of its brands is Old Navy, which operates over 1,200 stores worldwide. In August 2021, Gap launched BODEQUALITY, an initiative to increase plus-size clothing options in Old Navy stores. Old Navy previously carried a limited selection of plus-size clothes in stores, but BODEQUALITY required stores to carry every item in the women's lineup in every size. Stores reduced inventory in the sizes they already carried to make room for the additional offerings.

A few weeks after BODEQUALITY launched, some Old Navy stores sold out of their medium sizes but not the larger sizes. They began to move plus-size clothes to the clearance section, selling them at reduced prices to move inventory. Some stores also faced

3

declining sales as customers were unable to find clothes in the sizes they wanted.

In December 2021, Sonia Syngal—who was Gap's CEO at the time—and other high-level executives visited two Old Navy stores in Sacramento, California, as part of Gap's annual "Jet Trip," during which executives visit stores in a selected market to troubleshoot strategy for the holiday season. During this visit, the general managers of the two stores told Syngal about their shortages in medium sizes and over-supply in plus-sizes. Afterwards, Old Navy management asked other stores in Northern California to report their inventory by size for specific styles.

In January 2022, Gap removed its extended plus-size offerings from about 75 stores. And by February or March 2022, it decided to offer extended sizing online only, not in stores. On May 20, 2022, *The Wall Street Journal* published an article stating that BODEQUALITY had contributed to declining sales in Old Navy stores. And on May 27, 2022, Gap filed a Form 10-Q with the SEC disclosing that its results for the first quarter of 2022 were negatively impacted in part "by execution missteps in size and assortment at Old Navy related to BODEQUALITY." App'x at 45.

B.    Procedural History

On December 5, 2022, Plaintiffs filed this lawsuit, claiming violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. They alleged that Defendants made false or misleading statements in risk-disclosure statements, earnings calls, and press releases between November 2021 and March 2022 by failing to disclose problems with BODEQUALITY.

4

On March 31, 2025, the district court granted Defendants' motion to dismiss. *See Diaz v. Gap, Inc.*, No. 22-cv-07371, 2025 WL 1293308 (E.D.N.Y. Mar. 31, 2025). The district court concluded that Plaintiffs failed to identify any false or misleading statement or to plead that Defendants acted with scienter. *Id.* at *18-19. In light of the failure to plead a primary violation, the district court also dismissed Plaintiffs' remaining § 20(a) claim. *Id.* at *22.

## II. DISCUSSION

A. <u>Legal Framework</u>

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff[s]' favor." *City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F.4th 288, 293 (2d Cir. 2025) (citation omitted).

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 implements this prohibition by making it unlawful for issuers of registered securities "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). "To state a claim for relief under § 10(b) and Rule 10b-5, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the

5

plaintiff's reliance was the proximate cause of its injury." *Peloton Interactive*, 153 F.4th at 295 (quotation marks omitted).

Section 20(a) of the Exchange Act provides that every person "who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the . . . violation." 15 U.S.C. § 78t(a). Section 20(a) thus "provides that individual executives, as controlling persons of a company, are secondarily liable for their company's violations of the Exchange Act." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 152 (2d Cir. 2021) (cleaned up).

B.    Materially False or Misleading Statements

The district court concluded that Plaintiffs failed to allege any actionable misstatement or omission. "The test for whether a statement is materially misleading . . . is whether the defendants' representations, taken together and in context, would have misled a reasonable investor." *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004) (quotation marks omitted). And a reasonable investor "reads each statement . . . whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Omissions are material when "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quotation marks omitted).

6

But it is not enough for Plaintiffs to show that an omission was material because "§ 10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (citation omitted). Instead, disclosure "is required when necessary to make statements made, in light of the circumstances under which they were made, not misleading." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (cleaned up).

### 1. *Risk-Disclosure Statements*

We first address the challenged risk-disclosure statements. Gap's 2020 Annual Report, filed with the SEC on March 16, 2021, warned that "[w]e must successfully gauge apparel trends and changing consumer preferences to succeed," and "[t]o the extent we misjudge the market for our merchandise . . . the markdowns required to move the resulting excess inventory will adversely affect our operating results." App'x at 73. It also warned that "[i]f we are unable to manage our inventory effectively, our gross margins could be adversely affected," and if "key strategic initiatives designed to optimize our inventory levels" are not implemented successfully, "we may not realize the return on our investments that we anticipate, and our operating results could be adversely affected." *Id.* at 75. Plaintiffs do not challenge the 2020 Annual Report itself, which predates BODEQUALITY. Instead, they challenge statements made in press releases and during earnings calls on November 23, 2021 and March 3, 2022 directing investors to "refer to" the 2020 Annual Report for "information on factors that could cause our actual results to differ materially from any forward-looking statements." *Id.* at 23, 26, 31, 33. They also challenge two other statements related to the 2020 Annual Report: a disclosure in Gap's November 2021 Form 10-Q stating that there had been "no material changes in [Gap's] risk factors" from the 2020 Annual Report, and a disclosure in Gap's 2021

7

Annual Report, filed with the SEC on March 15, 2022, repeating the risk disclosures from the year before. *Id.* at 28-30, 35-37. Plaintiffs argue that it was misleading to incorporate or to reiterate these risk disclosures without also disclosing that the risks they warned against had materialized.

Whether a warning about a future risk is misleading when it fails to disclose that the risk already materialized depends on how a reasonable investor would understand the statements "taken together and in context." *Rombach*, 355 F.3d at 172 n.7. A risk disclosure may be misleading if it leads a reasonable investor to believe that the risk has not yet materialized. This inquiry depends on context, and courts must "keep in mind that a complaint fails to state a claim of securities fraud if *no reasonable investor* could have been misled about the nature of the risk when he invested." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002).

We reject Plaintiffs' proposed rule that a risk disclosure is actionable whenever a company fails to disclose that the risk already materialized in some way. Plaintiffs' argument misreads our precedent. In *Set Capital*, we concluded that risk disclosures were actionable because the defendants assured investors that they "had 'no reason to believe'" that the risks they warned against would materialize, even though they knew it was "virtually certain" that they would. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85-86 (2d Cir. 2021). Similarly, in *Peloton Interactive*, the defendants' presentation of the risk of inventory write-downs and discounted sales as hypothetical was misleading because over 91% of Peloton's inventory remained unsold, making it inevitable that the company would have to offer substantial discounts to sell excess inventory. 153 F.4th at 301. Meanwhile, the defendants falsely claimed that discounts were "an offensive move to expand market share rather than a defensive attempt to mitigate the losses." *Id.* at 300 (citation

8

omitted). Under the totality of the circumstances in these cases, the failure to disclose that the risks warned against had actually materialized rendered the seemingly hypothetical disclosures misleading.

By contrast, the challenged risk disclosures here would not have misled a reasonable investor about BODEQUALITY. To start, Gap's disclosures concerned ubiquitous risks in the industry, as opposed to more discrete, context-dependent, or event-driven risks. Clothing retailers regularly "misjudge the market" for merchandise and must discount prices "to move the resulting excess inventory." App'x at 24. No reasonable investor would have understood Gap's acknowledgment of this risk to mean that it had not misjudged the market for certain clothes or was not discounting excess inventory at the time. The fact that identical, generic disclosures were issued both before and after BODEQUALITY, and made no mention of the initiative, makes it more likely that a reasonable investor would have understood the warnings to be about general risks in the clothing industry, not BODEQUALITY in particular. Moreover, the challenged risk disclosures did not present "the risk of inventory write-downs and discounted sales as merely hypothetical," *Peloton Interactive*, 153 F.4th at 301, or assure investors that Gap had "no reason to believe" that the risks it warned about would materialize, *Set Cap. LLC*, 996 F.3d at 72. Instead, Gap disclosed that it is "vulnerable to demand and pricing shifts and to suboptimal selection," and it admitted that it had "not always predicted [its] customers' preferences . . . with accuracy." App'x at 24.

In light of the generic nature of the challenged risk disclosures, the absence of any specific connection to BODEQUALITY, and Gap's admission that the risks were not merely hypothetical but had materialized in the past and would reoccur, we agree with the district

9

court that the challenged statements would not have misled a reasonable investor about the nature of the risks disclosed.

### 2. *Earnings-Call Statements*

We next turn to the challenged statements that Defendants made during an earnings call to investors. On November 23, 2021, Syngal told investors that:

> BODEQUALITY, Old Navy's inclusive sizing integration launched successfully in August. The brand more than doubled its extended size customer file[s] since launch. 15% of customers who shop extended sizes are new to the brand and more than a third have shopped Old Navy before that are new to the category. We are seeing strong extended size demand across fashion categories, a clear signal that our customer is craving trend choice lacking in the market.

App'x at 25.

Plaintiffs contend that these statements were "misleading for claiming that Old Navy was seeing 'strong extended size demand' and that this was 'a clear signal that our customer is craving trend choice lacking in the market' because, as a result of poor sales in extended sizes, Old Navy was conducting deeper than normal discounting." *Id.* at 25-26.

The district court properly rejected this argument and concluded that the November 2021 earnings-call statements were not misleading. First, Syngal's characterization of demand as "strong" and her optimistic prediction that customers are "craving trend choice" were unactionable puffery. *See Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 174 (2d Cir. 2020) (statements characterizing results as "encouraging" and "an improvement" were unactionable puffery where plaintiffs failed to show that defendants believed them

10

to be false).   Second, Syngal's assessment that plus-size demand was "strong" was based on quantifiable metrics about new customers, which she disclosed to investors.   Plaintiffs disagree with Syngal's assessment, but characterizing the plus-size demand as strong in November 2021 was consistent with the data at the time.   *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[A]s long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects.").

Plaintiffs have thus failed to show that Syngal's statements in the November 23, 2021 earnings call were actionably false or misleading.[1]

3.    *Press Releases*

Plaintiffs allege that two of Gap's press releases in late 2021 and early 2022 also misled investors by attributing inventory problems to supply-chain issues resulting from COVID-19.   Specifically, on November 23, 2021, Gap issued a press release disclosing that "[c]omparable sales were down 9% year-over-year and increased 6% versus 2019.   Sales in the quarter outpaced available inventory as the brand was disproportionately impacted by supply chain delays, particularly within the women's assortment."   App'x at 23.   And on March 3, 2022, Gap issued a press release stating that "Fourth quarter net sales were muted in part due to supply chain impacts, up 2%

---

[1] Plaintiffs also suggest on appeal that it was misleading for Syngal to say that BODEQUALITY "launched successfully."   But they identify no problems with BODEQUALITY's *launch* and thus fail to "demonstrate with specificity why and how" the challenged statement was misleading.   *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021) (quoting *Rombach*, 355 F.3d at 174).

11

versus 2019 with comparable sales flat versus 2019." *Id.* at 31. Plaintiffs contend that these press releases were misleading because they failed to disclose that sales were down in part due to problems with BODEQUALITY.

Plaintiffs have not plausibly alleged that these statements were misleading. A company's decision to speak about one aspect of sales does not necessarily require it to address other issues. Plaintiffs' theory that "if a registrant discloses sales or inventory," then it must disclose all circumstances "that are materially impacting sales and inventory," Appellants' Br. at 33, is untenably overbroad and foreclosed by precedent, *see, e.g.*, *Matrixx Initiatives*, 563 U.S. at 44 ("[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information."). Defendants' statements about quarterly sales and supply-chain issues due to COVID-19 did not, on their own, give rise to a duty to disclose inventory issues caused by BODEQUALITY.

### 4. *Item 303 Omissions*

Lastly, Plaintiffs argue that Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303, by failing to disclose problems with BODEQUALITY in their November 2021 Form 10-Q. Item 303 requires that certain SEC filings describe "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues." *Id.* § 229.303(b)(2)(ii). Plaintiffs thus argue that "Item 303 imposed the obligation to disclose that BODEQUALITY was a material failure." Appellants' Br. at 41.

We reject this argument because "the failure to disclose information required by Item 303 can[not] support a private action

12

under Rule 10b-5(b)" unless the failure renders any "statements made" misleading. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024). Plaintiffs try on appeal to tie their Item 303 allegations to a statement in Gap's November 2021 Form 10-Q describing "key initiatives" designed to "expand customer reach"— BODEQUALITY among them. Appellants' Br. at 40 (quoting App'x at 101). That is, Plaintiffs argue that BODEQUALITY was having an "unfavorable impact on net sales or revenues," so Gap's failure to disclose that impact (the alleged Item 303 violation) made its statement that BODEQUALITY was a "key initiative" materially misleading. But this statement, which was first attached as an exhibit to Defendants' motion to dismiss, appears nowhere in the Complaint. *See* 15 U.S.C. § 78u-4(b)(1) (requiring that a securities fraud "complaint . . . specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading"). And regardless, even if there were problems with BODEQUALITY in November 2021, that would have no bearing on whether BODEQUALITY was a "key initiative" intended to "expand customer reach," so its omission would not render the statements made misleading. Plaintiffs' Item 303 allegations thus fail to state a claim. *See Macquarie*, 601 U.S. at 260, 264.

C. Scienter

The district court also correctly concluded that the Complaint fails to allege that Defendants acted with scienter. The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), requires that securities fraud plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). Plaintiffs may satisfy this requirement by "alleging facts (1) showing that the defendants

13

had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 48 (2d Cir. 2024) (quotation marks omitted). Plaintiffs do not allege "motive and opportunity," so "their circumstantial evidence of fraud must be correspondingly greater." *Slayton v. Am. Express Co.*, 604 F.3d 758, 776 (2d Cir. 2010).

Plaintiffs allege that: (1) Defendants received reports about BODEQUALITY; (2) Defendants regularly monitored inventory levels; (3) confidential witnesses heard that other employees told Defendants about problems with BODEQUALITY; and (4) managing Old Navy's inventory was one of Gap's core operations. Taken together, these allegations are insufficient to establish a strong inference of scienter.

Plaintiffs' allegations that Defendants received information about BODEQUALITY and inventory levels generally are insufficient to support a strong inference of scienter. *See Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."). The Complaint does not identify who prepared these reports or when, nor does it describe their content. And there is no allegation that these reports attributed declining sales or inventory problems to BODEQUALITY. Instead, Plaintiffs rely on a confidential witness's secondhand account that two store managers told Syngal that they had too many plus-sizes and not enough medium sizes in stock. Such conversations might support the inference that Defendants knew that certain stores were having inventory problems, but not that BODEQUALITY was faltering nationwide. So Plaintiffs' allegations do not suggest that Defendants "knew facts or had access to non-public information

14

contradicting their public statements." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001). On the contrary, the fact that Defendants rolled back BODEQUALITY in only 75 out of 1,200 stores in January 2022 supports the contrary inference that Defendants initially believed that issues with BODEQUALITY were confined to certain stores. *Cf. Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) (explaining that a strong inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

Plaintiffs' invocation of the "core operations doctrine" does not salvage their insufficient scienter allegations. That doctrine posits that "scienter may be imputed to key officers who should have known facts relating to the core operations of their company." *Gimpel v. Hain Celestial Grp., Inc.*, 156 F.4th 121, 148 n.19 (2d Cir. 2025) (quotation marks omitted). We have not "clearly affirmed the validity of the core-operations doctrine following the passage of the PSLRA, although we have suggested that the doctrine can provide supplemental support for allegations of scienter, even if they cannot establish scienter independently." *Id.* (cleaned up). In any event, although Plaintiffs allege generally that inventory and Old Navy itself constitute Gap's "core operations," they never attempt to quantify the importance of BODEQUALITY to those operations. Plaintiffs thus cannot establish scienter in light of their failure to allege evidence of conscious misbehavior or recklessness.

D.   Control-Person Liability

Finally, we affirm the dismissal of Plaintiffs' § 20(a) claim in light of their failure to state a claim for a primary violation under the Exchange Act. *See Altimeo Asset Mgmt.*, 19 F.4th at 152.

15

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.